ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Radmacher Brothers Excavating Co., Inc. | ) | ASBCA Nos. 63276, 63367 |
| | ) | |
| Under Contract No. W912DQ-17-C-1095 | ) | |

APPEARANCE FOR THE APPELLANT:      G. Steven Ruprecht, Esq.
    Brown & Ruprecht Attorneys at Law, PC
    Kansas City, MO

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
    Engineer Chief Trial Attorney
    Virginia Murray, Esq.
    Jacob T. Simpson, Esq.
    Engineer Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT ON THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

These appeals concern a contract between the United States Army Corps of Engineers (the government or the Corps) and Radmacher Brothers Excavating Co., Inc. (appellant or Radmacher). Contract No. W912DQ-17-C-1095 (the contract) was a contract to construct improvements to lower Turkey Creek in Wyandotte County, Kansas City, Kansas. Part of the contract required excavation operations to install underground piping under active railroad tracks. During performance of the contract, after receiving a request for information, the government informed appellant that it could not perform the boring, jacking, and pipe installation when trains were actively in use and also when stationary trains were present. This appeal resulted from the delays allegedly caused by the stationary trains. The government filed a motion for partial summary judgment, arguing that appellant referenced contract clauses not contained in the contract and did not meet the requirements for a differing site condition. For the reasons set forth below, we grant the government's motion regarding the clauses not included in the contract and the type 1 differing site condition claim but deny the motion regarding the type 2 differing site conditions claim.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1. On August 4, 2017, the government issued Solicitation No. W912DQ-17-B-1018 (the solicitation) for the contract (R4, tab 9 at 8).

2. The solicitation included a requirement for boring and jacking (i.e. forcing the pipe through the embankment) under active railroad tracks to install 96-inch reinforced concrete pipe (R4, tab 9 at 754-99).

3. The solicitation's performance work statement included

> All tracks will remain in use at all times. Once jacking operations has commenced, it shall be continued uninterrupted around the clock until the conduit has been jacked under all live tracks except that no pipe movement will be allowed while a train is passing over any tracks designated as main tracks.

(R4, tab 9 at 760 ¶ H) The solicitation was silent concerning stationary trains.

4. The solicitation included directions that required extreme care when moving pipe under all tracks due to settlement issues. It stated, "If settlement occurs at any track, all jacking operations shall cease and Contractor shall notify COR immediately. No additional compensation will be made for the subsequent delays to the Contractor." (R4, tab 9 at 760 ¶ I)

5. The solicitation also directed, "No equipment or materials can be operated or stored within fifteen (15) feet of the centerline of any railroad track that is subject to train traffic, without first receiving permission from the BNSF and UP railroad." It also included further directions about excavations and shoring. (R4, tab 9 at 760 ¶ J)

6. On September 29, 2017, the government awarded the contract to appellant, in the amount of $26,577,770 (R4, tab 18 at 3).

7. The contract included Federal Acquisition Regulation (FAR) 52.243-4, CHANGES (JUN 2007) (R4, tab 18 at 55-56).

8. The contract included FAR 52.236-2, DIFFERING SITE CONDITIONS (APR 1984) (R4, tab 18 at 53).

9. Neither the contract nor the solicitation included General Services Administration Manual (GSAM) 552.243-71, a General Services Administration clause

concerning Equitable Adjustments referenced by appellant in its certified claim (R4, tabs 4, 9, 18, 46).

10. Neither the contract nor the solicitation included FAR 52.243-5, CHANGES AND CHANGED CONDITIONS (APR 1984) (R4, tabs 9, 18). FAR 43.205 directed using this clause "in solicitations and contracts for construction, when the contract amount is not expected to exceed the simplified acquisition threshold." FAR 43.205(e). The simplified acquisition threshold was $250,000. FAR 2.101. This $26.5 million contract exceeded the simplified acquisition threshold.

11. On February 27, 2019, appellant submitted Request for Information Report (RFI) No. 0025 with the subject "Boring While a Train is Parked on the Tracks." Appellant notified the government that it noticed "a string of railcars, with or without locomotives has remained parked for extended periods of time on the tracks that span the boring alignments between STA 5+69 and STA 8+01." Appellant asked whether it would be prohibited from boring if the stationary trains remained when boring operations were ready to begin and if appellant would receive any time and monetary adjustments if a delay occurred. (R4, tab 25)

12. On March 29, 2019, the government answered appellant's RFI No. 25, explaining that settlement can be a problem during jacking and that if a train was stopped on the track, "pipe jacking shall not be permitted unless the boring head has passed through the loading zone of the tracks." It went on to recommend coordinating with the train companies to avoid having trains parked on the tracks above the borings. The government closed with the statement, "This response is derived from railroad guidance, which is required to be followed. Therefore, the Government does not anticipate a cost or schedule impact from this response." (R4, tab 28 at 3)

13. On November 2, 2021, appellant submitted a request for equitable adjustment to the contracting officer, in the amount of $933,656.89, arguing that it was entitled to delay costs for the contract "under 48 CFR 552.243-71; 'Changes Clause' FAR 52.243-4; Changes and Changed Conditions Clause FAR 52.243-5; Differing Site Conditions Clause FAR 52.236-2, and any other provision of [the] Contract allowing entitlement to an equitable adjustment for additional time and costs incurred . . . (R4, tab 4 at 2-3)." The request was certified, allowing it to also be characterized as a certified claim (R4, tab 4 at 4).

14. On February 1, 2022, the contracting officer issued a contracting officer's final decision letter, granting part of what appellant claimed and agreeing that the government owed a time extension of 13 days and monetary compensation in the amount of $351,751 (R4, tab 3 at 9). On February 7, 2022, the contracting officer amended the decision letter to add interest in the amount of $1,542.52 (R4, tab 2 at 10).

3

15. On May 4, 2022, appellant appealed to the Board. The Board docketed the appeal as ASBCA No. 63276.

16. On July 27, 2022, appellant notified the Board that it reduced the certified claim amount to $771,244.30 plus interest. The Board docketed this as a new appeal, ASBCA No. 63367. The parties requested this appeal be consolidated with ASBCA No. 63276, which the Board approved.

17. On June 26, 2023, the government filed a motion for partial summary judgment, asking the Board to grant it summary judgment. The government argued that appellant's theory of differing site conditions did not properly apply to the situation and that appellant's remaining arguments relied upon clauses not contained in the contract (gov't mot. at 7-15). On July 26, 2023, appellant responded, appearing to concede to the government's arguments regarding the two clauses not contained in the contract and type 1 differing site conditions but explaining why the Board should deny the government's motion regarding type 2 differing site conditions (app. resp. at 5-7). On August 23, 2023, the government replied, arguing that appellant did not dispute any facts, that appellant conceded to the arguments concerning the clauses not in the contract and type 1 differing site conditions, and that type 2 differing site conditions are more difficult to prove, so the entire motion should be granted (gov't reply at 2-9).

DECISION

As an initial matter, appellant appears to concede that the government is correct in that it does not have any avenues of recovery concerning the two clauses, the General Services Administration clause 552.243-71 and FAR 52.243-5, that are not in the contract as well as the type 1 differing site condition. Thus, we will not further address those three aspects of appellant's claim and we grant the government's motion for summary judgment on those issues. We address the remaining issue of whether summary judgment is appropriate for the type 2 differing site condition portion of the claim.

Summary judgment is proper if the record and pleadings demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citing FED. R. CIV. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Chugach Fed. Solutions, Inc.*, ASBCA No. 61320, 20-1 BCA ¶ 37,617 at 182,594 (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987)). To defeat a motion for summary judgment, a non-moving party must set forth sufficient facts to demonstrate that a genuine issue of material fact exists. *AXXON Int'l, LLC*, ASBCA No. 61224 *et al.*, 20-1 BCA ¶ 37,489 at 182,144 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine issue of

4

material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993). When considering motions for summary judgment, the evidence produced by the non-moving party is to be believed and all justifiable inferences are drawn in its favor. *Europe Asia Constr. Logistic*, ASBCA No. 61553, 19-1 BCA ¶ 37,267 at 181,351 (citing *American Boys Constr. Co.*, ASBCA No. 61163, 18-1 BCA ¶ 36,949 at 180,051).

Here, appellant raises the issue that stationary trains on the tracks for extended periods of time were an unknown or unexpected condition that should allow recovery as a type 2 differing site condition (app. resp. at 7). While appellant did not point to any portion of the record in making this assertion and did not dispute the government's listed facts, appellant indirectly presented facts supporting its theory that stationary trains may have impacted performance of the contract by citing to the contracting officer's final decision. While it would have been more useful if appellant had cited to underlying facts or disputed the government's facts rather than citing to the contracting officer's final decision, we must consider the evidence presented by the non-movant by drawing all justifiable inferences in its favor. When considering the evidence in the record with all justifiable inferences drawn in appellant's favor, we consider the facts underlying the portions of the contracting officer's final decision that appellant cited as well as the record before us. In reviewing the record, we consider appellant's certified claim that outlines all of the delays claimed and the amounts as well as assertions that the delays were caused by stationary trains and must believe those assertions for the purpose of the motion for summary judgment. We cannot determine from our further review of the record any particular details about the stationary trains. We also cannot determine from the facts asserted or the record if stationary trains may have impacted contract performance or whether the stationary trains were unusual, unknown, or unexpected enough to allow appellant to recover under a type 2 differing site conditions theory. The information does not seem to be available in the record and the issues have not been fully briefed by either party.

Additionally, the government did not cite in its facts anything regarding stationary trains and their impact (or lack thereof) on the contract. Instead, the government replied with an argument that it is more difficult for appellant to prove type 2 differing site conditions (gov't rep. at 6-8). While this may be true, the difficulty that appellant may encounter in proving this at a hearing and post-trial briefing does not change that we must draw all justifiable inferences in favor of the non-movant when considering a motion for summary judgment. It is still possible that a reasonable trier of fact could decide the issue in favor of the non-movant. Thus, due to the current state of the record, we cannot determine that the government is entitled to summary judgment as a matter of law regarding the type 2 differing site conditions argument.

We agree with appellant that, for the purposes of this motion for summary judgment, a genuine issue of material fact exists and the government's motion for partial summary judgment is denied regarding type 2 differing site condition.

<u>CONCLUSION</u>

We grant the government's motion, in part, for recovery under the arguments concerning GSAM 552.243-71, FAR 52.243-5, and type 1 differing site condition. We find a genuine issue of material fact exists regarding the stationary trains; thus, we deny, in part, the government's motion regarding type 2 differing site condition.

Dated: October 27, 2023

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63276, 63367, Appeals of Radmacher Brothers Excavating Co., Inc., rendered in conformance with the Board's Charter.

Dated:  October 27, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals